## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

**MICHAEL TODD HEBERT,**

  **Plaintiff,**

**vs.**                                   **Case No. 3:23-CV-24008-MAF**

**MARTIN J. O'MALLEY,**
**Commissioner of Social Security[1],**

  **Defendant.**
_____/

## <u>MEMORANDUM OPINION AND ORDER</u>

This case was referred to the undersigned upon consent of the parties, ECF No. 9, and by United States District Judge M. Casey Rodgers.  ECF No. 14.  It is before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act.  After careful consideration of the record, the decision of the Commissioner is AFFIRMED.

_____

[1] Martin O'Malley was nominated by President Biden to be Commissioner of the Social Security Administration and, following confirmation by the U.S. Senate, was sworn into office December 20, 2023. The Clerk of Court is directed to correct the docket to reflect Defendant's name.

## I.    Procedural History

Plaintiff filed an application for Disability Insurance Benefits on June 30, 2020, alleging he became disabled beginning November 9, 2019. Tr. 198.[2] That application was denied initially and on reconsideration. Tr. 113; 119. Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 123), which hearing was held by videoconference on November 14, 2022, before ALJ Laura L. Robinson. Tr. 51-70. Plaintiff testified through counsel, Byron Lassiter. Tr. 55-66. Donald Woodall, the Vocational Expert (VE), also testified. Tr. 66-69.  ALJ Robinson issued an unfavorable decision on January 5, 2023 (Tr. 32-46); the Appeals Council denied review. Tr. 15.

Through counsel, Plaintiff filed his complaint with this Court on May 3, 2023.  ECF No. 1.  Plaintiff filed a Memorandum in Support of the Complaint on December 1, 2023.  ECF No. 10.  The Commissioner filed a responsive memorandum in support of the Commissioner's position on January 30, 2024. ECF No. 13.  This matter is ripe for review.

## II.   Issues Presented

Plaintiff's Brief presents the following issues for review:

(1) The ALJ committed harmful error when she found consultative examiner Dr. Spaulding's opinion and the state agency psychological consultants' opinions to be persuasive but then rejected portions of their opinions without explanation.

---

[2] References to the record will be to "Tr." followed by the page number.

Case No.: 3:23cv24008-MAF

(2) The ALJ's finding that there are significant jobs in the national economy that plaintiff can perform is not supported by substantial evidence because the vocational expert's (VE) testimony is unreliable and the RFC is overly vague.

ECF No. 10, p. 9; 11; 18.  As these are the only issues presented, the Court will limit its review of ALJ Robinson's opinion and record to these matters.

## III.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 F.2d at 1239; accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[3]

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002).

---

whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

The Commissioner analyzes a disability claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three

---

[4] An RFC is the most a claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term 'residual functional capacity assessment' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally, Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), adopted, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that he cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. As the finder of fact, pursuant to 20 C.F.R. §§ 404.1502(a) and 404.1513(a)(2), the ALJ considers medical opinions from licensed physicians and psychologists and acceptable medical sources. The ALJ is charged with the duty to evaluate all the medical

opinions of record and resolve conflicts that might appear. 20 C.F.R. §
404.1527.

Pursuant to the revised regulations applicable to claims filed on or after
March 27, 2017, an ALJ will not "defer or give any specific evidentiary weight,
including controlling weight, to any medical opinion(s) or prior administrative
medical finding(s), including those from [the claimant's own] medical
sources." 20 C.F.R. § 416.920c(a) (2017). The removal of the treating source
rule is intended to "eliminate confusion about a hierarchy of medical sources
and instead focus adjudication" on the evidence, as well as ensure that
courts are not reweighing the evidence under the substantial evidence
standard of review, which is intended to be a highly deferential standard.
Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed.
Reg. 5844, 5853 (Jan. 18, 2017). The Eleventh Circuit has recognized that
the "new regulatory scheme no longer requires the ALJ to either assign more
weight to medical opinions from a claimant's treating source or explain why
good cause exists to disregard the treating source's opinion." Matos v.
Comm'r of Soc. Sec., No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan.
10, 2022).

The ALJ must now determine the persuasiveness of medical opinions
by considering supportability, consistency, treatment relationship,

specialization, and other factors. 20 C.F.R. § 416.920c(c)(1)-(c)(5) (2017). Because supportability and consistency are the "most important" factors, the ALJ must articulate how these factors were considered for a medical source's opinions or prior administrative medical findings, but an ALJ is not required to articulate how the remaining factors were considered unless there are equally persuasive medical opinions or prior administrative medical findings as explained in 20 C.F.R. § 416.920c(b)(3). 20 C.F.R. § 416.920c(b)(2) (2017). The ALJ will consider one or more medical opinions or prior administrative medical findings from the same medical source together using the above factors; and the ALJ is not required to articulate how he or she considered each opinion or finding. 20 C.F.R. § 416.920c(b)(1) (2017).

The Commissioner's regulations do not require the ALJ to use any "magic language" or follow a particular formula when addressing the supportability and consistency factors. See 20 C.F.R. § 416.920c(b)(2); Thaxton v. Kijakazi, No. 1:20-cv-00616-SRW, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (citations omitted). Accordingly, the ALJ does not have to address the

supportability and consistency factors through separate analyses as long as the analysis addresses the substance of both factors. See Alvarez v. Comm'r of Soc. Sec., No. 20-cv-24711-Bloom/Otazo-Reyes, 2022 WL 2092886, at *2 (S.D. Fla. June 10, 2022) (finding that the ALJ's simultaneous consideration of supportability and consistency factors was not improper) (citing, inter alia, Thaxton, 2022 WL 983156, at *8); Rivera v. Kijakazi, No. 6:21-cv-93-AAS, 2022 WL 2965883, at *4 (M.D. Fla. July 27, 2022) ("The articulation requirement is met so long as the evaluation addresses the substance of the factors, regardless of the specific language used in the evaluation.") (citing Cook v. Comm'r of Soc. Sec., No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *5 (M.D. Fla. Apr. 6, 2021)).

## IV.    ALJ Robinson's Findings

In her order, ALJ Robinson properly articulates and follows the five-step sequential evaluation process for determining disability.  See 20 CFR § 416.920(a).  In doing so, ALJ Robinson made the following findings (denoted in bold):

**1.     The claimant last met the insured status requirements of the Social Security Act on December 31, 2021.**  This fact is not in dispute.

**2.     The claimant did not engage in substantial gainful activity during the period from his alleged onset date of November 9, 2019,**

**through his date last insured of December 31, 2021 (20 CFR 404.1571 et seq.).** This fact is not in dispute.

**3.     Through the date last insured, the claimant had the following severe impairments:  umbilical hernia, obesity, depressive disorder, anxiety disorder, and trauma disorder (20 CFR 404.1520(c)).** This fact is not in dispute.

ALJ Robinson confirmed that the above listed impairments significantly limit the ability to perform basic work activities as required by SSR 85-28. Because Plaintiff did not have any work-related limitations based on his gastroesophageal reflux disease (GERD), ALJ Robinson found that disorder to be non-severe.   ALJ Robinson contends that she considered all of Plaintiff's medically-determinable impairments, including non-severe impairments, in assessing Plaintiff's RFC.

**4.     Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).** This fact is in dispute.

ALJ Robinson finds that Plaintiff's medically determinable impairments, either singularly or in combination, do not establish

presumptive disability under the evaluative standards found in Appendix 1, Subpart P, Regulations No. 4.  No examining or treating physician or other medical source found or opined that Plaintiff's condition met the criteria of a listed impairment.  Moreover, Plaintiff has not asserted that his impairments met or equaled the severity of any listed impairment.  Tr. 35.

With respect to Plaintiff's mental health impairments, ALJ Robinson concluded that those impairments did not meet or equal the criteria of listings 12.04, 12.06, 12.08 and 12.15 because Plaintiff did not have an extreme limitation or two marked limitations in broad areas of functioning.

ALJ Robinson concluded that Plaintiff only had a mild limitation with respect to understanding, remembering, or applying information.  Tr. 35. Plaintiff's longitudinal record does not evidence a record of diagnosis and treatment of mental impairments, and he was treated by his primary care physician (William Howe II, M.D.) with outpatient medications with consistent reports of doing well, with some indication of panic attacks, depression, and agitation in large crowds, all of which were controlled by medications.  Id. The consultive psychologist, Chad Hagans, PhD., noted Plaintiff was alert and fully oriented, with normal speech and unremarkable psychomotor activity.  Tr. 369.  Plaintiff was not able to count backwards by 7 from 100 to 65, but could follow instructions on varied tasks without observable difficulty,

and was able to repeat two somewhat complex sentences from immediate memory.  Id.  He exhibited average vocabulary and was able to repeat two of five words after a recall delay.  Id.  He had normal flow of thought, unimpeded and content logic, and capacity for abstraction.  Id.  He had no suicidal or homicidal ideation, did not respond to internal stimuli such as hallucinations, and his mood was mildly irritable.  Id.  A more recent consultive examination by Richard Willens, Psy.D., noted a somewhat depressed mood, but no apparent mental limitations on exam. Tr. 83.

According to ALJ Robinson, Plaintiff's allegations are only partially consistent with the evidence of record and his activities of daily living, and suggest a greater impairment than supported by the clinical evidence.  Tr. 35-36.  There is no evidence of decompensation or recent psychiatric or psychotic-like symptoms; and no evidence of significant intellectual deficits. Tr. 36.  Ultimately, ALJ Robinson gave Dr. Hagans' opinion as a consulting physician some consideration as it was based on an objective assessment and was relatively consistent with the totality of the medical evidence of record.  Id.; 367-71.  Plaintiff's mental impairments imposed no more than a mild limitation in this area. Tr. 36.

Based on her review of that same evidence, ALJ Robinson concluded that Plaintiff had a moderate limitation with respect to his interaction with

others and his concentration, persistence, and maintenance of pace.  Tr. 36-37.  Likewise, with respect to adapting or managing oneself, ALJ Robinson concluded the evidence supported a finding of a moderate limitation in that area.  Tr. 37. In addition to the evidence referenced above, ALJ Robinson noted that Plaintiff described his activities of daily living to include that he lives at home with his wife, who works during the day.  Tr. 243-50.  Plaintiff stays home alone and was able to take care of his personal needs, taking his medication and showering with reminders.  Plaintiff sat in his recliner, watched TV and drum videos, mowed the lawn, prepared simple meals with the microwave, and did household chores.  While his anxiety prevented him from driving, he went outside once a day in the yard or for a walk.  He can handle a savings account and count change, but has trouble remembering what he had to pay.  He had no problems with family, friends, and neighbors, though he does not handle stress or changes to routine.

ALJ Robinson also concluded that the evidence did not establish the presence of the "paragraph C" criteria.  Tr. 38.

**5.    After careful consideration of the entire record, [ALJ Robinson] finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently climb ramps and stairs,**

**but never climb ladders, ropes or scaffolds. He can occasionally balance; frequently stoop, kneel, and crouch; and occasionally crawl. He should avoid concentrated exposure to extreme heat and heights/hazards. He can perform simple, routine tasks for two-hour periods with customary breaks over the course of an eight-hour workday. He can tolerate occasional interaction with supervisors and coworkers, but should not perform tasks requiring direct interaction with the public. He can tolerate gradual change in a routine work setting. He is unable to tolerate tasks requiring travel to unfamiliar places.** This fact is in dispute.

ALJ Robinson contends that she considered all the symptoms and whether those symptoms are consistent with the objective medical evidence and other evidence, consistent with 20 CR 404.1529, SSR 16-3P, and 20CFR 404.1520c. Tr. 38.

Plaintiff reported that his ability to work was limited by "depression, social anxiety, paranoid and hard to remember things." Tr. 217. He was 6'2" and 290 pounds according to his medical records. Id. He described his pain as "all over joint and muscle" and "aching/moderate", and stated that it occurs when he does chores – such as mowing grass – and lasts for a couple of days and makes it difficult for him to focus. Tr. 223-24. Plaintiff relieves his

pain with showers and Tylenol.  Tr. 224.

At the hearing, Plaintiff confirmed his age (currently 60 years old); height and weight (5'8" 267 pounds)[5]; marital status (married); that he lives with his wife; that he has no minor children; that his wife is employed; that he does not have a drivers license (though he has had one in the past); that he has not been employed since November 2019; that he previously worked as a production operator on an oil rig; and that his prior employment was manual labor that required a lot of lifting.  Tr. 39; 56-58; 65-66.  While his umbilical hernia affects his ability to lift and carry, he can still lift 20-25 pounds easily or more with some pain.  Tr. 65.

Plaintiff also testified that his multiple head injuries and social anxiety keep him from working.  Tr. 58.  Crowds make him anxious, and he gets angry.  Tr. 58-59.  He takes medications (Lexapro, Klonopin and  Abilify) on his own, and they have been helpful without any adverse side effects, other than the Klonopin making him drowsy.  Tr. 60; 65-66.  He has never participated in counseling or therapy.  Tr. 60-61.  Most days, Plaintiff sits in the recliner and watches TV.  He sometimes does chores and mows the

---

[5] Plaintiff's reported height is inconsistent with those provided by Plaintiff on other occasions and by the numerous physicians who examined him and his records. Because Plaintiff does not argue his alleged obesity was a factor which would lead to his disability, the Court merely notes this discrepancy.

grass.  Tr. 61.  He has trouble sleeping, so naps on and off during the day. Tr. 63.  While he is able to care for himself, he sometimes forgets how long it has been since he showered.  Tr. 63-64. Large crowds make him nervous; dealing with people is hard because he has trouble comprehending what is being asked and his short-term memory issues cause him to forget what he is supposed to do, what he has eaten, and/or people's names. Tr. 62.  He does not talk on the phone and is home alone most of the day.  Tr. 66.

ALJ Robinson also reviewed Plaintiff's medical history:

*Lakeview Center* – Lakeview Center records reflect services from February 2014 through January 2016.  Those records detail that Plaintiff was diagnosed with opiate dependency.  Tr. 309. As part of that treatment, he stopped taking Xanax.  His treatment with buprenorphine resulted in improved thinking and interactions.  Tr. 313-17.  In July 2014, Plaintiff stopped Suboxone treatments, concluding after his own research that it was bad for him.  Tr. 318.  On January 3, 2016, Plaintiff was Baker Acted after drinking alcohol at home and feeling stressed out by his boss.  Tr. 322.  At that time Plaintiff was diagnosed with anxiety disorder, alcohol use disorder (mild to moderate) and adjustment disorder with anxiety, with a history of panic attacks.  Tr. 323.  He did not meet the criteria for a Baker Act and was discharged.  Id.

*William Howe II, M.D.* – Dr. Howe was Plaintiff's primary care physician, and reported that Plaintiff was treated with medications for anxiety/depression and reported consistently that he was doing well between June 2019 and February 2021.  Tr. 359; 360; 362; 364; 365.  Plaintiff did report some agitation with large crowds in February 2021.  He was diagnosed with GERD with no dyspepsia.  Tr. 659.

Plaintiff returned to Dr. Howe for treatment after a seven-month delay in September 2021.  Dr. Howe continued treating his anxiety and depression with medications (Clonazepam, Lexapro, and Abilify).  Tr. 373. He was directed to return for continued treatment in three months. Id.

Eight months later, in May 2022, Plaintiff returned to Dr. Howe.  Tr. 396.  Plaintiff reported fluid retention/ankle swelling at the end of the day, but no pain and that he was walking a lot. Id.  Plaintiff was also diagnosed with eczema and folliculitis on his left side (neck and face), an umbilical hernia, GERD, and obesity.  Tr. 396-97.  His depression and anxiety were stable and improved with prescription medications.  Tr. 396.

*Ginger Spaulding, Psy. D.* – Dr. Spaulding performed a consultative psychological evaluation in November 2019.  Tr. 353-57. Plaintiff was cooperative, somewhat inarticulate, and had significant anxiety/depression. His immediate memory was intact, he could follow instructions, manage

funds, and he had normal flow of thoughts.  Tr. 355-56.  However, he was mildly irritable with constricted affect, and was diagnosed with post traumatic stress disorder and major depressive disorder.  Tr. 356.

Dr. Spaulding opined that Plaintiff appeared to have the ability to reason and understand, but his sustained concentration, persistence, pace, and memory were mildly to moderately impaired.  Tr. 356.  He also had moderate impairment with interpersonal relationships, including his interaction with co-workers and the public, because of his anxiety and depressed mood.  Id.  Likewise, because of his mood, symptoms, and anxiety his ability to maintain regular attendance in the workplace would be moderately impaired, as would his ability to complete a normal workday or workweek without interruption.  Id. His ability to deal with the usual stress encountered in the workplace was mildly impaired. Id.

ALJ Robinson found Dr. Spaulding's consultive opinion that Plaintiff was no more than moderately limited to be generally persuasive as consistent with the other evidence of record.  Tr. 43.

*Chad Hagans, Ph. D* – Plaintiff underwent a consultative psychological evaluation in August 2021 by Dr. Hagans.  Tr. 367-70. Plaintiff confirmed that he was taking psychotropic medications prescribed by Dr. Howe, that he was not receiving any other mental health treatment, and that his medications

kept him calm and on even keel.  Tr. 367.  Plaintiff had a history of arrests and DUIs, but he denied any current alcohol/substance abuse; he was appropriately groomed, friendly and cooperative during the exam; he was alert and fully oriented with normal speech; his immediate memory was intact; he was able to follow instructions on varied tasks without difficultly; his flow of thoughts was normal and unimpeded, and the content of his thoughts was logical, cohesive, and coherent with normal capacity for abstraction.  Tr. 368-69.  His mood was presented as mildly irritable with constricted affect, but there was no clinical indication that he was incompetent to manage his own finances in his own best interest.  Tr. 369.  He was diagnosed with major depressive disorder and post traumatic stress disorder.  Tr. 370.

According to Dr. Hagans, Plaintiff had no impairment in the following areas:  understanding and remembering very short and simple instructions; carrying out very short and simple instructions; making simple and complex work-related decisions.  Id. Plaintiff had mild impairment in understanding and remembering detailed instructions; in carrying out detailed instructions; in interacting appropriately with supervisors and co-workers. Id. Dr. Hagans found that Plaintiff was moderately impaired in his ability to interact appropriately with the public and in his ability to respond appropriately to usual work situations and to changes in a routine work setting.  Id.

ALJ Robinson found Dr. Hagan's consulting opinion to be partially persuasive, concluding that the record suggests somewhat greater limitations than suggested by Dr. Hagans, but that his opinion was consistent with the totality of the medical evidence.  Tr. 43.

*J. Lance Reese, M.D.* – Plaintiff also underwent a physical consultative examination by Dr. Reese in September 2021.  Tr. 386-94.  Dr. Reese noted that Plaintiff was taking psychotropic medications – Klonopin, Lexapro and Abilify.  Tr. 386.  According to Dr. Reese, Plaintiff reported as generally healthy, other than his weight (283) and elevated blood pressure (139/89). He could walk greater than two city blocks without shortness of breath; he could climb two flights of stairs without shortness of breath; he could stand for at least two hours without a break; he could stand eight hours in a day if given breaks; he could lift 25 pounds with both hands, and 15 pounds with either hand alone; and he could pick up a coin, button a shirt, zip a zipper, tie his shoes, open a jar, pick up his keys, write with a pencil, grip and grasp objects, and shake hands.  Tr. 387-88.  During the exam, Plaintiff was alert and oriented, was able to answer all questions, made eye contact, was well nourished and groomed, and spoke with normal speed and volume.  Tr. 388. He was cooperative and had a polite attitude.  Id. Dr. Reese noted Plaintiff's amputated finger (for which he claimed no impairment), obesity and hernia.

Id. While Plaintiff reported he was diagnosed with depression and anxiety and did not want to be around people at work, Dr. Reese reported no mental limitation on examination – he was alert and oriented times four; there was no evidence of delirium or psychosis, and he was fluently verbal and intelligent.  Tr. 394.

ALJ Robinson found Dr. Reese's opinion persuasive because of its consistency with other evidence of record.  Tr. 43.  Dr. Reese noted Plaintiff's physical conditions, noting that the only limitation was heavy lifting until the hernia was repaired.  Id. Mentally, Dr. Reese noted Plaintiff's challenges, but concluded there was no apparent mental limitation.  Id. Although Plaintiff had a somewhat depressed mood, he was alert and oriented times four; had no evidence of delirium or psychosis; and was fluently verbal and intelligent.  Id.

*Paul Sporn, M.D.* – Dr. Sporn, a state agency physician, found that Plaintiff was capable of medium work with postural and environmental limitations, including that Plaintiff could frequently climb ramps and stairs, but not ladders, ropes or scaffolds; he could occasionally balance and crawl; that he could frequently stoop, kneel, and crouch; that he should avoid concentrated exposure to extreme heat, heights, and hazards.  Tr. 94-95. ALJ Robinson found Dr. Sporn's opinion to be persuasive as consistent with and supported by the medical evidence and the Plaintiff's testimony.  Tr. 43.

*Bradley Stephan, M.D.* – Dr. Stephan, a state agency physician, found that Plaintiff was capable of medium work.  Tr. 85.  However, ALJ Robinson found that opinion to be only partially persuasive as she believed the evidence available on reconsideration and at hearing supported greater postural and environmental limitations. Tr. 43.

*Richard Willens, Psy.D.* --  Dr. Willens, a state agency psychologist found no more than moderate limitations under "B" criteria and no evidence to establish the presence of the "C" criteria.  ALJ Robinson found this opinion to be generally persuasive because it was consistent with and supported by the evidence and Plaintiff's reported activities of daily living.  Tr. 80-83.

*Sharon Ames-Dennard, Ph. D* --  Dr. Ames-Dennard, a state agency psychologist, also found no more than moderate limitations under "B" criteria and no evidence to establish the presence of the "C" criteria.  ALJ Robinson found this opinion to be generally persuasive because it was consistent with and supported by the medical evidence of record and Plaintiff's reported activities of daily living.  Tr. 89-93.

Ultimately, ALJ Robinson concluded that while Plaintiff's determinable impairments could reasonably be expected to cause the alleged symptoms, the medical evidence and other evidence of record did not support Plaintiff's statements concerning the alleged intensity, persistence and limiting effects

of the symptoms.  Tr. 42. Plaintiff responded to his medications with no more than moderate limitations.  Id.  Plaintiff's reports regarding his activities of daily living suggest a greater level of impairment than supported by the clinical evidence.  Id.  Plaintiff has not required emergent treatment or inpatient hospitalization because of a mental health impairment, and there is no evidence of any significant intellectual deficit.  Id.  Plaintiff had a hernia (for which surgical repair was recommended) and obesity, but those conditions only required a limitation regarding heavy lifting.  Id.  ALJ Robinson believes Plaintiff could maintain medium work activity.  Id.

With respect to Plaintiff's activities of daily living, ALJ Robinson details the information provided by both Plaintiff and his wife.  These include:

> living in a house with his wife who works during the day. He testified he stays home alone and is able [to] care for his own personal needs, but may need a reminder to shower, and he takes his medication with the help of his wife.  He testified that he sat in a recliner and watched TV. He might do a little yard work, such as mowing the lawn. . . .he indicated he prepared simple meals in a microwave . . . He went outside once a day.  He traveled by walking and was able to go out alone in the yard or on the porch. His anxiety prevented him from driving.  He was able to count change and handle a savings account, but had difficulty focusing and it was hard for him to remember what he had to pay. His hobbies included watching TV and drum videos. He spent time with his wife and she took him to get his hair cut once a month.  He indicated no problems getting along with family, friends, neighbors, or others.  He does not handle stress or changes in routine well.

Tr. 44; 227-34; 243-50. ALJ Robinson concluded that Plaintiff's ability to engage in these activities of daily living is persuasive evidence that Plaintiff's alleged symptoms resulting from physical and/or mental impairments are not totally disabling.  Id.

ALJ Robinson notes that Plaintiff has not been hospitalized for any physical or mental health condition since his alleged onset date.  Tr. 44. Moreover, it appears that Plaintiff's conditions have been alleviated or controlled with proper and regular use of prescription medications.  Id. Other than drowsiness associated with his clonazepam, Plaintiff has not had any difficulties with side effects, and the medications have been successful in assisting Plaintiff in maintaining control of impairments and mitigating any accompanying symptomatology. Id.

ALJ Robinson concludes that the record fails to "document persistent, reliable manifestations of a disabling loss of functional capacity resulting from any reported symptomatology."  Id. There was limited use of medication; an inconsistent medical regimen of treatment; and a lack of hospitalizations or significant treatment for pain and/or other symptoms.  Id. ALJ Robinson concluded these factors support a finding that Plaintiff's symptoms are not disabling, and that his conditions were not so intense and chronic that work at all levels of activity would be precluded. Id.  Claimant's

alleged physical and/or mental symptoms and conditions are not of a disabling degree.  Tr. 45.

**6.     Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).** This fact is not in dispute.

**7.     The claimant was born on April 27, 1964, and was 57 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563).** This fact is not in dispute.  Plaintiff is currently 60 years old.

**8.     The claimant has at least a high school education (20 CFR 404.1564).** This fact is not in dispute.

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (<u>See</u> SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).** This fact is not in dispute.

**10.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and**

**404.1569a).** This fact is in dispute.

ALJ Robinson finds that Plaintiff's ability to perform all or substantially all of the requirements of medium work was impeded by his additional limitations. Tr. 46.  To determine the extent to which these limitations eroded the unskilled medium base through Plaintiff's date last insured, ALJ Robinson was required to ask the VE whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC.  Id. The VE testified that Plaintiff was able to perform each of the following jobs (Tr. 68):

| Job Title | DOT  No. | Skill Level | Exertional Level | Jobs Nationally |
|---|---|---|---|---|
| Groundskeeper | 406.684-014 | Unskilled SVP2 | Medium | 200,000 |
| Hand packager | 920.587-014 | Unskilled SVP2 | Medium | 77,000 |
| Janitor | 358.687-010 | Unskilled SVP2 | Medium | 72,000 |

The VE noted that his responses were generally consistent with the Dictionary of Occupational Titles (DOT), but that the DOT does not specifically address limitations relating to interaction, changes or travel, so his responses in that regard are based on his education, training and work in placement and analysis.  Tr. 46; 69.  ALJ Robinson determined that the VE expert testimony was consistent with the DOT as supplemented by his

education, training, experience, and research.   Tr. 46.   Ultimately, ALJ Robinson concluded that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy.  Id.  As a result, Plaintiff was not disabled.  Id.

**11.   The claimant was not under a disability, as defined in the Social Security Act, at any time from November 9, 2019, the alleged onset date, through December 31, 2021, the date last insured (20 CFR 404.1520(g)).** This fact is in dispute.

ALJ Robinson concluded, based on the application for a period of disability and disability insurance benefits protectively filed on June 30, 2020, Plaintiff was not disabled under sections 216 (i) and 223 (d) of the Social Security Act through December 31, 2021, the date last insured.  Id.

## V.   Plaintiff's Claims

**ALJ ROBINSON COMMITTED HARMFUL ERROR WHEN SHE FOUND EXPERT OPINIONS TO BE PERSUASIVE BUT THEN REJECTED PORTIONS OF THEIR OPINIONS WITHOUT EXPLANATION**

**A. <u>ALJ Robinson's evaluation of Dr. Spaulding's opinion is not supported by substantial evidence.</u>** According to Plaintiff, ALJ Robinson found Dr. Spaulding's opinion to be generally persuasive, noting that her opinion was consistent with, and supported by, the record.  Tr. 43.  ALJ

Robinson articulated no reason for rejecting any aspect of her opinion. However, Dr. Spaulding's opinion contains proposed limitations that exceed the limitations imposed in the RFC assessment. Tr. 43. Plaintiff contends ALJ Robinson's failure to articulate any rationale for her rejection of this opinion despite finding it consistent with, and supported by, the record renders meaningful judicial review impossible and results in the ALJ's conclusions being unsupported by substantial evidence. It cannot be ascertained whether ALJ Robinson applied the correct legal standards set forth in § 404.1520c when she provides no explanation for her findings.

After her examination, Dr. Spaulding opined that Plaintiff had a guarded prognosis, as he ". . . presented with a significant amount of anxiety and depressive symptoms, which interfere with his ability to function appropriately." Tr. 356. She opined that Plaintiff would have moderate impairment in maintaining regular attendance at work and from completing a normal workday or work week without interruption regardless of the complexity of work performed. Id.

Despite finding Dr. Spaulding's opinion persuasive, Plaintiff argues that ALJ Robinson did not include any limitations in the RFC that would account for Plaintiff's moderate limitations in maintaining attendance nor his moderate limitations in completing a normal workday or work week without

interruption. Tr. 38. The RFC does not provide any accommodation for absences, arriving at work late, or leaving work early that would arise from Plaintiff's moderate limitations in maintaining attendance. The RFC does not provide any accommodation for extra breaks or off task time that would naturally result from Plaintiff's moderate limitation in the ability to complete a normal workday or work week without interruption from psychological symptoms. ALJ Robinson found that moderate limitations in these areas were present based on her assessment of Dr. Spaulding's opinion, but then failed to account for them in the RFC. Plaintiff argues that the RFC is incomplete and not supported by substantial evidence. For the testimony of a vocational expert to constitute substantial evidence, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 661 (11th Cir. 2007) (quoting Jones v. Apfel, 190 F.3d 1224, 1229, 1230 (11th Cir. 1999)).

Plaintiff contends that ALJ Robinson was required to explain why the moderate limitations in attendance and the ability to complete a normal workday/workweek were rejected, and could not simply find the opinion persuasive and then only adopt the limitations that suited her. Such cherry-picking from the limitations identified by a particular doctor without explanation is forbidden. Rios v. Acting Comm'r of the Soc. Sec. Admin.,

2023 WL 5926916, at *6 (M.D. Fla. Sept. 12, 2023) (citation omitted).

**B. ALJ Robinson's evaluation of the opinions of the State agency psychological consultants is not supported by substantial evidence.**

ALJ Robinson found the opinions of the State agency psychological consultants Dr. Willens and Dr. Ames-Dennard to be "generally persuasive," finding the opinions were consistent with, and supported by, the record.  Tr. 44.  Again, ALJ Robinson articulated no reason for rejecting any part of their opinions. Id. Both psychologists opined limitations that exceed the limitations provided in the RFC. Dr. Willens opined, consistent with Dr. Spaulding's opinion, that Plaintiff would be moderately limited in the ability to complete a normal workday and workweek without interruption from psychological symptoms, and would be moderately limited in his ability to work without an unreasonable number of breaks. Tr. 86. Dr. Ames-Dennard opined that Plaintiff would have a "decreased ability to cooperate effectively with the public and coworkers, even on simple tasks." Tr. 97.

As discussed in Part A *supra*, the RFC does not include any provisions that would account for Plaintiff's moderate limitations in maintaining attendance nor his moderate limitations in completing a normal workday or work week without interruption. Tr. 38. The RFC does not provide any accommodation for absences, arriving late to work, or leaving work early that

would arise from Plaintiff's moderate limitations in sustaining a consistent pace without unreasonable breaks Id. ALJ Robinson limited Plaintiff to occasional interaction with coworkers and found that Plaintiff should perform no tasks requiring interaction with the general public; however, Dr. Ames-Dennard opined that Plaintiff would be equally limited in dealing with the general public and coworkers. Tr. 86. Therefore, this RFC is not as restrictive as Dr. Ames-Dennard's opinion in that regard.

As with Dr. Spaulding's opinion, Plaintiff contends ALJ Robinson was required to articulate why she rejected the State agency consultants' opinions, in part. Because she failed to do so, there is no logical bridge connecting ALJ Robinson's conclusions to the evidence and meaningful judicial review for regulatory compliance is not possible. See Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1065 (11th Cir. 2021); SSR 96-8p. ALJ Robinson is missing the logical explanation portion of the analysis. In its place, there is only supposition and inference. The Commissioner cannot now create the logical bridge for the ALJ after the fact. "It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" Dep't of Homeland Sec. v. Regents of the Univ. of California, 140 S. Ct. 1891, 1907 (2020) (quoting Michigan v. EPA, 576 U.S. 743, 750 (2015)).

Plaintiff argues that when an ALJ finds an opinion persuasive, but then rejects it in part by not including the opined limitations in the RFC, she is required to provide an explanation for the rejection. Where the ALJ fails to do so, then there is not an adequate explanation of consistency and supportability sufficient to allow for meaningful review. These errors were harmful because moderate limitations in Plaintiff's ability to complete a normal workday/workweek and a moderate limitation in sustaining concentration without unreasonable breaks may preclude work. Tr. 69 (an individual off task 15% of the day could not perform competitive work).

**ALJ ROBINSON'S FINDING THAT THERE ARE A SIGNIFICANT NUMBER OF JOBS IN THE NATIONAL ECONOMY THAT PLAINTIFF CAN PERFORM IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE THE VE TESTIMONY IS UNRELIABLE AND THE RFC IS OVERLY VAGUE.**

Plaintiff contends that the VE's testimony in this case is unreliable. The VE testified that Plaintiff could perform work as a groundskeeper, DOT #406.684-014. Tr. 46. However, the job of groundskeeper is semi-skilled, with a specific vocational preparation level of 3. Dictionary of Occupational Titles, Vol. 1 290 (4th ed. 1991). Thus, there is a direct conflict between the vocational expert's testimony and the DOT because under the framework of Medical-Vocational Rule 203.15, which was applied at step five, only unskilled jobs with a specific vocational preparation level of 2, or lower, may

be utilized to find that there is other work that Plaintiff can perform. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 203.15. Thus, this is not a valid job that can be utilized at step five absent a finding that Plaintiff has transferable skills that can be utilized in this occupation. Furthermore, the finding that Plaintiff can perform this job violates the limitation to only simple, routine tasks in the RFC. Tr. 38. The VE erroneously testified this job was unskilled, with a specific vocational preparation level of 2. Tr. 58. So, that job is eliminated.

Here, the RFC also contains the rather vague limitation that Plaintiff is "unable to tolerate tasks requiring travel to unfamiliar places." Tr. 38. Plaintiff contends there are two possible, reasonable interpretations of this RFC restriction. The first interpretation is that ALJ Robinson meant that Plaintiff is unable to work in a job that requires travel outside of the normal workplace, such as delivery of products or sales calls. Of course, the RFC does not specify that this is what the limitation is intended to mean. The second interpretation is simply that this Plaintiff is unable to perform tasks in a place that he is unfamiliar with due to his mental impairments. This interpretation more closely comports with the plain language of the limitation in the RFC.

The second reasonable interpretation necessarily calls into question whether Plaintiff will be able to function in competitive employment in any place with which he was not previously acquainted, since anywhere he has

not been previously will of course be "unfamiliar." Thus, any task he performs in a job that is in a location with which he is not acquainted will be a task requiring travel to an unfamiliar place. Therefore, it will be precluded by the RFC. This means Plaintiff would be unable to work in general competitive employment in places with which he is unfamiliar, and no evidence was obtained regarding whether Plaintiff was familiar with any workplaces where he could function as a groundskeeper, hand packager, or janitor. Tr. 46.

It is unknown whether the VE's understanding of the RFC was interpretation one or interpretation two, since the RFC is vague, and the matter was never clarified. Regardless, it is not at all clear which interpretation ALJ Robinson intended nor which the VE applied in his testimony. Competitive work is going to, by definition, require traveling to an unfamiliar place unless it is a workplace with which the Plaintiff is previously acquainted. The Commissioner has not established that Plaintiff is familiar with 77,000 places where he can work as a hand packager or 72,000 places where he can work as a janitor. Tr. 46. Therefore, the Commissioner has not met the burden of proving that there are such places Plaintiff can work at despite being precluded from performing any work tasks in an unfamiliar place. Tr. 38. Thus, according to Plaintiff, step five is not supported by substantial evidence.

## VI.   Commissioner's Response

### Substantial Evidence Supports ALJ Robinson's Evaluation
### of the Opinion of the Consulting and State Agency Psychologists.

A.   <u>Dr. Spaulding</u>   Dr. Spaulding opined Plaintiff would have moderate limitations in his ability to maintain attendance in the workplace and complete a normal workday or work week without interruption from his symptoms. Tr. 356. ALJ Robinson explained that Dr. Spaulding's assessed limitations were supported by the psychological evaluation findings and other evidence of record. Tr. 43; 353-57. <u>See</u> 20 C.F.R. § 404.1520c(c)(1) (supportability factor). On mental status exam, Plaintiff was alert and oriented, performed serial 7's successfully, and had no difficulty following conversation. Tr. 355. ALJ Robinson also contended that Plaintiff's assessed limitations were consistent with the psychological evaluation findings and other evidence of record. Tr. 43, 353-57. <u>See</u> 20 C.F.R. § 404.1520c(c)(2) (consistency factor). Plaintiff had no decompensation or recent psychological hospitalizations and there is no evidence of mania, psychosis, or psychotic-like symptoms. Tr. 83, 92. Therefore, according to the Commissioner, substantial evidence supports ALJ Robinson's finding.

B.   <u>State Agency Psychologists</u>   Dr. Willens and Dr. Ames-Dennard reviewed Plaintiff's file in October 2021 and May 2022 (Tr. 81-83; 85-87; 90-93; 96-97), and assessed that Plaintiff's depressive disorder, anxiety

disorder, and trauma disorder were severe.  However, a longitudinal review of record medical evidence does not establish a clear and consistent history of diagnosis and treatment for mental impairment. Tr. 83; 92. Plaintiff has a history of substance abuse with treatment for opiate dependency (2014) and alcohol abuse (2016). Id. Plaintiff has been treated with medications from his primary care physician (6/10/19-2/25/21), with consistent reports of doing well, with the most recent noting panic attacks and depression well controlled with medications, and some agitation in large crowds. Id.  The mental health consultative examination records note Plaintiff was alert, oriented, with normal speech, unremarkable motor, unable to count backwards by 7's from 100 to 65, recall delay 2/5, logical thought process, rather concrete, no Si/Hi, not RTIS and mood mildly irritable. Id.

Similarly, Plaintiff's physical consultative examinations note mental status examination with somewhat depressed mood, but "no apparent mental limitations on exam." Tr. 83; 92. Plaintiff's allegations are only partially consistent with record medical evidence, and Plaintiff's reported activities of daily living seem to suggest more impairment than is supported by the clinical data.  Id.  There was no decompensation or recent psychological hospitalizations; no evidence of mania, psychosis, or psychotic-like symptoms; no evidence of significant intellectual deficits. Id. Because it was

based on a single meeting and on Plaintiff's subjective report, the mental consultative examination opinion was not fully persuasive, but was given some weight as it is based on an objective assessment and is relatively consistent with totality of record medical evidence. Id. Although Plaintiff presents a history of anxiety/depression, the impairment does not impose more than moderate limitations in social, concentration persistence, pace, and adaptation. Tr. 83, 92-93. A review of the entire record of medical evidence does not meet or equal a listing. Tr. 83, 93.

Plaintiff had mild limitation in the domain of understanding, remembering, and applying information; and moderate limitations in the domains of interacting with others, concentrating, persisting, maintaining pace, and adapting and managing oneself. Tr. 82, 92. ALJ Robinson properly evaluated these findings and found them persuasive. Tr. 44. The state agency psychologists, Drs. Willens and Ames-Dennard, both found Plaintiff can carry out very short and simple instructions, he could sustain an ordinary routine without special supervision, and he was able to make simple work-related decisions. Tr. 86, 96. He can ask simple questions or request assistance, and he could maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Tr. 86, 97. Plaintiff can understand, retain, and carry out simple instructions. Tr. 87, 97. Plaintiff can

consistently and usefully perform routine tasks on a sustained basis with minimal (normal) supervision. Id. Plaintiff has decreased ability to cooperate effectively with public and co-workers in completing simple tasks and transactions and will function best on tasks with limited social demands. Id. Plaintiff can adjust over time to the mental demands of most new task settings. Id. According to the Commissioner, functional restrictions beyond the levels assessed above are not considered to be attributable to Plaintiff's mental illness, as reflected in the objective medical evidence in file. Id.

ALJ Robinson explained that the psychologists' assessed limitations were supported by the medical evidence of record and claimant's reported activities of daily living. Tr. 44. See 20 C.F.R. § 404.1520c(c)(1) (supportability factor). For example, Plaintiff had no decompensation or recent psychological hospitalizations and, as the state agency psychologists noted, there is no evidence of mania, psychosis, or psychotic-like symptoms. Tr. 83, 92. ALJ Robinson also argued the assessed limitations were consistent with the medical evidence of record and claimant's reported activities of daily living. Tr. 44. See 20 C.F.R. § 404.1520c(c)(2) (consistency factor). For instance, Plaintiff reported he can cook, clean, and perform yard work without difficulty. Tr. 356. He can attend to his grooming and hygiene needs independently. Tr. 356. The Commissioner contends substantial

evidence supports ALJ Robinson's finding in this regard.

C.    <u>ALJ Robinson does not have to adopt a limitation from a medical opinion or prior administrative medical finding into the RFC even if it is persuasive</u>.    The applicable regulations require an ALJ to evaluate the persuasiveness of medical opinions and prior administrative medical findings and articulate how he or she considered the supportability and consistency factors, unless the situation in which an ALJ must discuss other factors arises. 20 C.F.R. § 404.1520c(a)-(b). The regulations contain a source-level articulation requirement. 20 C.F.R. § 404.1520c(b)(1). They do not require ALJ Robinson to address every limitation identified by a medical source. <u>See id.</u>; <u>Cunningham v. Comm'r of Soc. Sec.</u>, No. 2:20-cv-913-SPC-NPM, 2022 WL 1085548, at *5 (M.D. Fla. Feb. 9, 2022).

The Commissioner contends an ALJ is not required to defer to any medical opinion or prior administrative medical finding. The regulations do not indicate that a "persuasive" opinion or prior administrative medical finding is "controlling" with respect to the RFC finding. <u>See id.</u>; <u>see also Sanders v. Comm'r of Soc. Sec.</u>, No. 2:20-cv-788-NPM, 2022 WL 970181, at *6 (M.D. Fla. Mar. 31, 2022) ("But finding an opinion persuasive does not mean it is controlling.") (citing 20 C.F.R. § 416.920c(a)). They do not require an ALJ to adopt every part of an opinion or prior administrative medical finding that he

or she finds persuasive into the RFC. *See* 20 C.F.R. § 404.1520c(a)-(b).

Multiple district courts have agreed with the Commissioner on this point. See*,* e.g., Sanders, 2022 WL 970181, at *6 ("And the regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive . . . Rather, the assessment of a claimant's RFC is within the exclusive province of the ALJ.") (citing, inter alia, 20 C.F.R. § 416.920c(a) and Freyhagen v. Comm'r of Soc. Sec., No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *8 (M.D. Fla. Sept. 26, 2019)); Sesler v. Comm'r of Soc. Sec., No. 8:20-cv-2835-DNF, 2021 WL 5881678, at *6 (M.D. Fla. Dec. 13, 2021) ("The new regulations do not defer or give specific evidentiary weight, including controlling weight, to any medical opinion. . . Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive.") (internal quotations and citations omitted); K.T.B. v. Comm'r of Soc. Sec., No: 3:20-CV-110-MSH, 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021) ("Plaintiff provides no authority, however, for the proposition that merely because an adjudicator finds a source persuasive, he must accept it wholly and incorporate into his RFC assessment any and all limitations that source suggests. To the contrary, the ALJ must only explain whether a source statement is persuasive considering its supportability in, and consistency with, the medical evidence as a whole.") (citing 20 C.F.R. §§

404.1520c(b)(2), 416.920c(b)(2)); Breaux v. Kijakazi, No. 20-cv-21917-Altonaga/Goodman, Doc. 29 at *14, *17 (S.D. Fla. July 22, 2021) (explaining the "requirements within regulations 20 C.F.R. § 416.920c(a)-(b) do not compel an ALJ to adopt every part of an opinion that she finds persuasive into the RFC" and later explaining that the ALJ "was not required to adopt any particular limitation in her RFC determination merely because she found these opinions to be persuasive"), report and recommendation adopted, 2021 WL 3721547 (S.D. Fla. Aug. 23, 2021); Misla v. Comm'r of Soc. Sec., No: 6:20-cv-1076-DCI, 2021 WL 2417084, at *2 (M.D. Fla. June 14, 2021) ("[A]n ALJ need not adopt every part of an opinion that the ALJ finds persuasive.") (citing 20 C.F.R. § 404.1520c(a)).

The Eleventh Circuit also does not take issue with an ALJ's RFC finding that does not mirror persuasive prior administrative medical findings. Matos v. Comm'r of Soc. Sec., No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022) (affirming ALJ's RFC finding as supported by substantial evidence even though the ALJ limited claimant to "occasionally interact with supervisors, coworkers, and the public," a limitation claimant argued was in conflict with persuasive State agency consultants' prior administrative medical findings that indicated claimant could have only "limited and superficial social interaction").

The Commissioner contends the RFC assessment is the responsibility of the ALJ, and the ALJ will assess the RFC "based on all of the relevant medical and other evidence," not any one medical opinion. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). As long as ALJ Robinson properly evaluated the medical opinion or prior administrative medical finding under the applicable regulations, the only issue is whether substantial evidence supports the RFC finding. Sesler, 2021 WL 5881678, at *6 ("As long as the ALJ properly evaluated the medical opinion – as he has done here – the only issue is whether substantial evidence supports the RFC assessment."). The Commissioner contends that  substantial evidence supports ALJ Robinson's RFC finding, so this Court should affirm.

ALJ Robinson's RFC limitation to simple, routine, and repetitive tasks, as well as the limitation to jobs which require only gradual work-setting changes, accounts for the ALJ's "Paragraph B" findings. Duval v. Comm'r of Soc. Sec., 628 F. App'x 703, 713 (11th Cir. 2015) ("[T]he ALJ accounted for Mr. Duval's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform."); Williams v. Soc. Sec. Admin., 661 F. App'x 977, 980 (11th Cir. 2016) (the ALJ did not err in his decision to omit claimant's depression from the RFC assessment where it caused no more than mild

limitations); <u>Pritchett v. Saul</u>, No. CV 19-00652-B, 2021 WL 9477085, at *11 (S.D. Ala. Mar. 31, 2021), <u>aff'd sub nom.</u> <u>Pritchett v. Comm'r, Soc. Sec. Admin.</u>, No. 21-11825, 2022 WL 950942 (11th Cir. Mar. 30, 2022) (RFC that said work changes should be introduced gradually properly accounted for moderate limitation to "adapting or managing oneself"). Accordingly, because ALJ Robinson's RFC implicitly accounts for Plaintiff's mental limitations and there is no requirement that ALJ Robinson include findings of medical opinions which she found persuasive, there is no basis for remand.

In addition, the Commissioner argues that Plaintiff has not shown any additional limitations relating to absenteeism or time off-task were supported and should have been included. ECF No. 10, pp.15-18. Overall, the record does not show Plaintiff would be absent from work such that he could not work on a "a regular and continuing basis . . . [of] 8 hours a day, for 5 days a week, *or an equivalent work schedule*" as contemplated in SSR 96-8p. The ALJ thoroughly discussed the medical evidence of record but, after considering all the evidence, did not find Plaintiff would be absent from work because of his impairments. Tr. 38-45. While Plaintiff wants this Court to reweigh evidence and find that the record could support a different RFC, this Court cannot reweigh evidence. <u>Mitchell</u>, 771 F.3d at 782.

The Commissioner recognizes that an ALJ is expected to build a "logical bridge" from the evidence to the conclusions. Sarchet v. Chater, 78 F.3d 305, 307 (7th Cir. 1996). This requirement means "an ALJ must articulate, at some minimum level, her analysis of the evidence." Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001)(citations omitted); see also Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004) (referring to an ALJ's "minimal duty to articulate his reasons and make a bridge between the evidence and the outcome"). According to the Commissioner, the minimal level of articulation is not meant to place an onerous burden on the ALJ, but rather represents a "lax standard" of what is required in an ALJ's decision. Berger v. Astrue, 516 F.3d 539, 545 (7th Cir. 2008). The ALJ need not evaluate every piece of evidence in writing, and her decision need not be flawless. Rice, 384 F.3d at 371; Berger, 516 F.3d at 545. Further, discussion of relevant evidence need not be confined to one portion of the ALJ's decision but can be included anywhere in the decision. Rice, 384 F.3d at 370; see also, e.g., Curvin v. Colvin, 778 F.3d 645, 650 (7th Cir. 2015). The Seventh Circuit recently explained that the "logical bridge" is just another way to describe the substantial evidence standard. When rejecting a Plaintiff's logical bridge argument, the Seventh Circuit held "[t]his argument rests on a faulty premise: the 'logical bridge' language in our caselaw is descriptive but

does not alter the applicable substantial evidence standard.'" <u>See</u> <u>Brumbaugh v. Saul</u>, 850 F. App'x 973, 977 (7th Cir. 2021) (<u>citing</u> <u>Biestek v.</u> <u>Berryhill</u>, 139 S.Ct. 1148, 1152 (2019)). Similarly, the Eleventh Circuit recently rejected an argument that an ALJ link evidence to the RFC finding and explained that the ALJ must only state with some clarity the reasons for the decision. <u>Sturdivant v. Soc. Sec. Admin., Comm'r</u>, No. 22-13952, 2023 WL 3526609, *3 (11th Cir. 2023)(citation omitted). The Commissioner contends that because substantial evidence supports the ALJ's decision, this Court should affirm.

### Substantial Evidence Supports ALJ Robinson's Finding that Plaintiff Remained Capable of Performing Work that Existed in Significant Numbers in the National Economy.

To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process that places the ultimate burden of persuasion on the claimant to prove that he is disabled and to produce evidence in support of his claim. 20 C.F.R. §§ 404.1512(a), 404.1520(a)(4); <u>Ellison</u>, 355 F.3d at 1276. Even if the ALJ finds at step four that a claimant cannot perform past relevant work, the ALJ will find the claimant not disabled at step five if she finds the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

In this case, substantial evidence supports ALJ Robinson's step-five finding that Plaintiff could perform work existing in significant numbers in the national economy. Tr. 45-46. At the hearing, ALJ Robinson posed a hypothetical question to the VE that incorporated all of the limitations eventually included in the RFC as is required. Tr. 67-68. Ingram v. Comm'r of Soc. Soc., 496 F.3d 1253, 1270 (11th Cir. 2007) (explaining an ALJ must pose a hypothetical question that comprises all of the claimant's impairments for testimony to constitute substantial evidence). The VE testified that an individual with those limitations could perform representative occupations such as groundskeeper, *DOT* #406.684-014, with 200,000 jobs; hand packager, *DOT* #920.587-014, with 77,000 jobs; and janitor, *DOT* #358.687-010, with 72,000 jobs. Tr. 67-68.

The Commissioner's regulations explain that "[w]ork exists in the national economy when there is a significant number of jobs (*in one or more occupations*) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications." 20 C.F.R. § 404.1566(b) (emphasis added). Eleventh Circuit precedent confirms a significant number of jobs can exist based on one occupation alone. Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (holding ALJ properly found claimant could perform a significant number of jobs based on the number of

jobs for one occupation). The Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." Atha v. Comm'r, Soc. Sec. Admin., 616 F. App'x 931, 934 (11th Cir. 2015).

Here, the number of jobs for a combination of the occupations—groundskeeper (200,000), hand packager (77,000), and janitor (72,000)—is sufficient to demonstrate jobs exist in significant numbers in the national economy. Tr. 67-68. In fact, multiple decisions show that a substantially lower number of jobs constitutes a significant number of jobs. E.g., Atha, 616 F. App'x at 934 (concluding 23,800 jobs nationally is significant).

Accordingly, the VE's testimony constitutes substantial evidence to support ALJ Robinson's step-five finding. This Court should affirm. See Biestek, 139 S. Ct. at 1153 (explaining the Commissioner's factual findings shall be conclusive if supported by substantial evidence) (citing 42 U.S.C. § 405(g)) based on the number of jobs for one occupation).

Plaintiff argues he was unable to perform the groundskeeper job because the DOT classifies the job as requiring General Educational Development (GED) Reasoning Level 3, which Plaintiff contends is inconsistent with his RFC for simple, routine tasks. ECF No. 10 at 19-20. Even if the groundskeeper job was eliminated due to an apparent conflict,

then 149,000 of the 349,000 identified jobs would remain. Tr. 67-68. The Commissioner contends this Court should still affirm.

Plaintiff also argues he was unable to perform the hand packager and janitor jobs because they are inconsistent with his RFC that he is "unable to tolerate tasks requiring travel to unfamiliar places." Tr. 38; 45-46. ECF No. 10, pp. 20-22. His argument is unavailing. The limitation does not conflict with the descriptions of the hand packager and janitor jobs. Tr. 38. *DOT* #920.587-014, 1991 WL 687916 (hand packager), *DOT* #358.687-010, 1991 WL 672957 (janitor). Neither the narrative descriptions of the hand packager and janitor jobs in the *DOT*, nor the specific limitations listed in the *DOT*, conflict with a restriction against inability to travel to unfamiliar places. *DOT* #920.587-014, 1991 WL 687916 (hand packager), *DOT* #358.687-010, 1991 WL 672957 (janitor). As the Eleventh Circuit recently held, even where there may be "potential[] tension" between the limitations in the RFC and the job description from the *DOT*, that does not rise to the level of an "apparent conflict" that the ALJ must resolve. Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1323 (11th Cir. 2021); see also Christmas v. Comm'r of Soc. Sec., 791 F. App'x 854 (11th Cir. 2019) (holding that the ALJ is not required to "draw inferences about job requirements that are unsupported by the *DOT*'s text and then resolve conflicts between the [vocational expert's]

testimony and those unsupported inferences"). Plaintiff has not adequately shown that there was an apparent conflict and, thus, has established no error.

## VII.  Legal Analysis

### Substantial Evidence Supports ALJ Robinson's
### Decision Regarding Plaintiff's RFC.

In this case, substantial evidence and proper legal analysis supports ALJ Robinson's decision that Plaintiff was not disabled.  The question is not whether this Court would reach a different decision on the same evidence, or whether the evidence here actually preponderates a different result, but, rather, whether there is sufficient evidence here to confirm that substantial evidence supports ALJ Robinson's decision.  Phillips, 357 F.3d at 1240 n.8 ("[i]f the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it"); see also Viverette v. Comm'r of Soc. Sec., 13 F.4th 1309, 1314 (11th Cir. 2021).  There is no doubt that ALJ Robinson's decision is so supported. Even if this Court disagrees with ALJ Robinson's resolution of the factual issues, and would resolve those disputed factual issues differently, ALJ Robinson's decision must be affirmed where, as here, it is supported by substantial evidence in the record as a whole. See Baker o/b/o Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

Plaintiff's main contention is that Dr. Spaulding, Dr. Willens, and Dr. Ames-Dennard each opined that Plaintiff would have a difficult time maintaining regular attendance at work, or completing a normal workday or work week without interruption. Tr. 86; 97; 356. However, as noted by ALJ Robinson, the record fails to "document persistent, reliable manifestations of a disabling loss of functional capacity resulting from any reported symptomatology." Tr. 44. ALJ Robinson properly considered those opinions, but ultimately did not adopt them as they were not, in her opinion, supported by the other evidence of record.[6]

The record evidence confirms there was limited use of medication, an inconsistent medical regimen of treatment, and a lack of hospitalizations or significant treatment for pain and/or other symptoms. Id. Plaintiff was not hospitalized for any physical or mental health condition since his alleged onset date. Id. Moreover, it appears that Plaintiff's conditions have been alleviated or controlled with proper and regular use of prescription medications. Id. The medications have been successful in assisting Plaintiff in maintaining control of impairments and mitigating any accompanying

---

[6] In fact, Dr. Hagans notes the limitations mentioned by Dr. Spaulding, but does not concur that Plaintiff would be limited in his ability to complete a normal workday or workweek. Tr. 368; 370. That conflict in evidence alone is substantial evidence enough to support ALJ Robinson's conclusion here.

symptomatology.  Id.  Plaintiff was taking psychotropic medications prescribed by Dr. Howe, he was not receiving any other mental health treatment, and his medications kept him calm and on even keel.  Tr. 367.  In fact, Plaintiff reported consistently that he was doing well between June 2019 and February 2021.  Tr. 359; 360; 362; 364; 365; 367; 396.  Thus, because Plaintiff's condition was treated with conservative methods, and there was improvement in that condition while he was being treated, Plaintiff's condition was not disabling.  See Peters v. Astrue, 232 F. App'x 866, 871 (11th Cir. 2007) (providing that a claimant's history of conservative treatment is a valid reason to discount the opinion of a treating physician); see also Horowitz v. Comm'r of Soc. Sec., 688 F. App'x 855, 861-62 (11th Cir. 2017) (providing that a physician's own conservative treatment of the claimant can undermine any opinion by that physician that the claimant had debilitating impairments).

Additionally, Plaintiff's ability to engage in activities of daily living is persuasive evidence that Plaintiff's alleged symptoms resulting from physical and/or mental impairments are not totally disabling.  Tr. 44. In fact, Plaintiff was able to work with Stanley Steamer even after his nervous breakdown which allegedly led to his termination from his off-shore job in 2016.  He was able to perform the requirements of the Stanley Steamer job, and only lost that job after three months because he did not have a drivers' license.  Tr.

354; 368.  He did not lose that job because of an inability to perform any required tasks or because of the need for additional breaks or excessive absences.  Moreover, ALJ Robinson properly articulated conditions in Plaintiff's RFC limiting his exposure to large crowds, the condition Plaintiff reported exacerbated his anxiety.  Tr. 38 (RFC provides for occasional interaction with supervisors and co-workers, but no direct interaction with the public); 58-59, 62 (Plaintiff's condition is worse in crowds); 356 (anxiety in public or social settings); 394 (doesn't want to be around people at work).

All of these factors support a finding that Plaintiff's symptoms are not disabling, and that his conditions were not so intense and chronic that work at all levels of activity would be precluded. As concluded by ALJ Robinson, Claimant's alleged physical and/or mental symptoms and conditions are not of a disabling degree.  Tr. 45.

### Substantial Evidence Supports ALJ Robinson's Finding that Plaintiff was Capable of Performing Work that Existed in Significant Numbers in the National Economy

Plaintiff argues that the ALJ Robinson erred by failing to resolve an apparent conflict between the VE's testimony and the DOT, because under the framework of Medical-Vocational Rule 203.15, only unskilled jobs with a specific vocational preparation of level 2 or lower may be utilized to find there is other work Plaintiff can perform.  20 C.F.R. Part 404, Subpart P, Appendix

2, § 203.15.  ECF No. 10, pp. 19-20.  The groundskeeper job is a semi-skilled job with a specific vocational preparation level of 3.  DOT, Vol. 1 290 (4th Ed. 1991).  Plaintiff argues that this error is not harmless because this position could not be performed by Plaintiff.

Although it might be argued that one of Plaintiff's normal activities suggests he was well suited for groundskeeping – he enjoyed mowing his own lawn – the Commissioner apparently concedes that the ALJ erred by failing to resolve the apparent conflict in the evidence between the VE's testimony and the DOT as it relates to this position.  ECF No. 13, pp. 19-20. The Commissioner, however, argues that this error was harmless because the error only affected approximately 200,000 of the 349,000 identified jobs. Id. at 20; Tr. 67-68.  149,000 positions remain in the national economy that could be performed by Plaintiff.  ECF No. 13, p. 20.

At step five of the sequential evaluation, the Commissioner must consider the claimant's RFC, "age, education, and work experience to determine whether the claimant can make an adjustment to other work." Phillips, 357 F.3d at 1239 (citation and internal quotation marks omitted). The burden temporarily shifts to the Commissioner to show that other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. Washington v. Comm'r of Soc. Sec.,

906 F.3d 1353, 1359 (11th Cir. 2018). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted).

"Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [*i.e.*, the ALJ]." Viverette, 13 F. 4th at 1318 (quoting Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1986)). "It is not appropriate for [the] court to decide, in the first instance, whether a *relatively low number* qualifies as a 'significant number' of jobs." Kimes v. Comm'r*, SSA*, 817 F. App'x 654, 659 (10th Cir. 2020) (emphasis added). Generally, "judicial line-drawing in this context is inappropriate, [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation and ... [because] the evaluation 'should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation.' " Viverette, 13 F.4th 1309 at 1318 (quoting Allen v. Barnhart, 357 F.3d 1140, 1146 (10th Cir. 2004)).

"That is not to say that under no circumstances would a specific number of jobs be considered *per se* significant for step five purposes." Ledford v. Comm'r of Soc. Sec., No. 8:20-CV-2516-JSM-SPF, 2022 WL

2195001, at *4 (M.D. Fla. June 1, 2022), report and recommendation adopted, No. 8:20-CV-2516-JSM-SPF, 2022 WL 2193158 (M.D. Fla. June 17, 2022); see Allen, 357 F.3d at 1146 (noting that harmless error "might have been open to us here had the number of available jobs identified by the VE not been one hundred but considerably greater"). Indeed, some courts have concluded that remand is unnecessary when the number of non-conflicted jobs in the national economy is greater than 100,000, because any such error would be harmless. Denmark v. Kijakazi, 2022 WL 831903, at *7 (M.D. Fla. March 21, 2022) (finding harmless error when ALJ's decision was still supported by the availability of 551,000 non-conflicted jobs in the national economy); Rodriguez v. Comm'r Soc. Sec. Admin., 2022 WL 4364506, at *5 (M.D. Fla. Sept. 21, 2022) (finding harmless error when ALJ's decision was still supported by the availability of 220,000 non-conflicted jobs in the national economy); accord Anderson v. Colvin, 514 F. App'x 756, 764 (10th Cir. 2013) (finding harmless error because there were approximately 650,000 non-conflicted jobs available in the nation economy); Carpenter v. Acting Comm'r of Soc. Sec., No. 5:23-CV-00037-KDB, 2023 WL 7726706, at *5 (W.D.N.C. Nov. 15, 2023) (concluding that it was harmless error when 134,000 non-conflicted positions existed in the national economy).

In this case, 57% of the jobs identified by the VE were affected by the conflict. This left approximately 149,000 jobs in the national economy that Plaintiff could perform. Tr. 67-68. This uncontested figure is less than the number of jobs in <u>Denmark</u>, <u>Rodriguez</u>, and <u>Anderson</u>, but more than the number of jobs remaining in <u>Carpenter</u>. Other courts have considered an even lower number of jobs in the national economy to be a significant number. <u>Allen v. Bowen</u>, 816 F.2d 600, 602 (11th Cir. 1987) (80,000 jobs in the nation was a significant number); <u>accord</u> <u>Milhem v. Kijakazi</u>, 52 F.4th 688, 697 (7th Cir. 2022) (concluding that 89,000 jobs was a significant number of jobs). Notably, the Eleventh Circuit has "never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant number' under the statute and regulations." <u>Atha</u>, 616 F. App'x at 934 (11th Cir. 2015) (finding 23,800 jobs in national economy constituted a "significant number"). As the <u>Atha</u> court held, although the ALJ bears the burden to identify jobs in the national economy that a plaintiff can perform, "the ALJ need not identify a certain number of jobs for its decision to be supported by substantial evidence." <u>Id.</u>

The question that remains is whether eliminating 57% of the identified jobs in the national economy is a sufficient reason to require a remand. None of the cases reviewing the issue identified in <u>Viverette</u> focus on what

percentage of the identified jobs was eliminated by the alleged error.  Thus, this Court will not focus on that issue.  Instead, as has been determined by the Courts who have examined this issue, this Court concludes that the existence of 149,000 jobs in the national economy is sufficient substantial evidence to support ALJ Robinson's decision and render any error made in including the 200,000 groundskeeper jobs in the step five analysis in this case harmless.

Plaintiff's argument that the RFC developed in this case was vague in that it failed to properly define what was meant by the statement that Plaintiff was "unable to tolerate tasks requiring travel to unfamiliar places"  is similarly rejected.  ECF No. 10, p. 20.   Plaintiff contends that such a restriction would require that Plaintiff only be employed at locations with which Plaintiff was previously acquainted.  ECF No. 10, p. 21.  That interpretation of the RFC is nonsensical and fails to consider the immediately preceding line in the RFC: that Plaintiff "can tolerate gradual change in a routine work setting."  Tr. 38. Plaintiff's RFC did not require that Plaintiff have had prior work experience at a particular location – only that his new work location not be drastically changed from day to day.  So long as Plaintiff was introduced to his work area, and that area was only subject to gradual change, there would be no issue.  Reading the entire RFC clears up any confusion contained in the

single line identified by Plaintiff.  There is substantial evidence to support ALJ Robinson's reasonable and articulated restrictions in this regard.

Accordingly, substantial evidence supports ALJ Robinson's conclusion that sufficient jobs existed in the national economy with the restrictions articulated in Plaintiff's RFC, so that Plaintiff was not disabled under the controlling law.

## VIII.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security disability benefits is **AFFIRMED**.  The Clerk is **DIRECTED** to enter judgment for the Defendant.

**DONE AND ORDERED** on September 25, 2024.


**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**